IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JASON C.,[1]                                                    Case No. 6:22-cv-00503-HL

        Plaintiff,                                    **OPINION AND ORDER**

   v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

_____

HALLMAN, United States Magistrate Judge:

      Plaintiff Jason C. brings this action under the Social Security Act (the "Act"), 42 U.S.C. §

405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied Plaintiff's application for Social Security Income

("SSI") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties.

U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Commissioner's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." This Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the [Commissioner's]." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (internal quotation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the [Commissioner's] decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotations omitted).

# BACKGROUND

## I.      Plaintiff's Application

Plaintiff alleges disability based on chronic obstructive pulmonary disease ("COPD"), vision problems, headaches, hearing issues, and back pain. Tr. 74.[2] He has a high school education and completed training as a journeyman electrician. Tr. 52.

Plaintiff applied for SSI and DIB on September 11, 2018, alleging an onset date of September 1, 2011, in both applications. Tr. 19. At the time of his alleged onset date, he was 40 years old, and was 48 years old at the time of application. Tr. 74. His application was initially denied on June 20, 2019, and again on reconsideration on March 4, 2021. Tr. 87, 104. Plaintiff subsequently requested a hearing, which was held on October 27, 2021, before Administrative Law Judge ("ALJ") Katherine Weatherly. Tr. 187, 44. Plaintiff appeared telephonically, represented by counsel; a vocational expert ("VE"), Jason Purinton, also testified. Tr. 46, 65. On November 1, 2021, the ALJ issued a decision denying Plaintiffs claims. Tr. 16-36.

Plaintiff requested Appeals Council review, and on February 1, 2022, the Appeals Council denied review. Tr. 7. Plaintiff then sought review before this Court.[3]

## II.     Sequential Disability Process

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 12).

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 3).

determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Bowen*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Bowen*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not meet step two, the claimant is not disabled. *Bowen*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Bowen*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Bowen*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant

can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the

Commissioner. *Bowen*, 482 U.S. at 146.

Finally, at step five, the Commissioner must establish that the claimant can perform other

work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not

disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since July 1, 2018, the amended, alleged onset date.[4] Tr. 21.

At step two, the ALJ determined that Plaintiff had the following severe impairments:

"degenerative disc disease of the lumbar spine; substance use disorder; obstructive sleep apnea;

emphysema; coronary artery disease; headaches; major depressive disorder, recurrent episode-

moderate; unspecified anxiety disorder; and neurocognitive disorder." Tr. 21-22.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically

equate the severity of a listed impairment. Tr. 23. The ALJ then found that Plaintiff had the RFC

to perform light work, as follows:

> the claimant can frequently climb ramps or stairs and balance,
> never climb ladders, ropes or scaffolds and occasionally stoop; he
> should avoid concentrated exposure to fumes, odors, dusts, gases,
> poor ventilations, etc. and should avoid even moderate exposure to
> hazards (machinery, heights, etc.); he can persist at simple, routine
> and repetitive tasks, make simple work-related decisions, perform
> work with few if any changes in the workplace and have no
> assembly line work; and he can have occasional contact with
> public.

Tr. 25.

---

[4] At the hearing, Plaintiff amended his alleged onset date to July 1, 2018. Tr. 48.

At step four, the ALJ found that Plaintiff is unable to perform any of his past relevant work as a car salesperson, car leasing manager, or food salesclerk. Tr. 34.

At step five—considering the Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including as a housekeeping cleaner, office helper, and mailroom clerk. Tr. 34, 35. Accordingly, the ALJ concluded that Plaintiff is not disabled. Tr. 35.

## DISCUSSION

Plaintiff alleges the ALJ committed four errors: (1) by finding Plaintiff's fibromyalgia was not a severe impairment at step two; (2) by rejecting Plaintiff's subjective symptom testimony; (3) by rejecting various medical opinion evidence; and (4) by rejecting lay witness testimony. For the reasons discussed below, the Commissioner's decision denying Plaintiff's claim is reversed and remanded for further proceedings.

I.      **Step Two – Fibromyalgia**

Plaintiff argues that the ALJ erred by concluding that his fibromyalgia was not a severe impairment. At step two, an ALJ determines whether the claimant has an impairment that is both medically determinable and severe. An impairment is severe if it "significantly limit[s]" the claimant's ability to do basic work activities, which are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is medically determinable if it is diagnosed based upon "objective evidence from an acceptable medical source." *Titles II & XVI: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations*, SSR 96-4P (S.S.A. July 2, 1996).

Specific to fibromyalgia, a claimant has a medically determinable impairment if an acceptable medical source diagnosed that condition, "reviewed the [claimant's] medical history[,] and conducted a physical exam." *Titles II & XVI: Evaluation of Fibromyalgia*, SSR 12-

PAGE 6 – OPINION AND ORDER

2P (S.S.A. July 25, 2012). Fibromyalgia is a rheumatic disease that causes inflammation of the

fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. *Benecke*

*v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Fibromyalgia's cause or causes are unknown,

there is no cure, and its symptoms are entirely subjective. *Rollins v. Massanari*, 261 F.3d 853,

855 (9th Cir. 2001). The disease is diagnosed entirely based on a patient's reports of pain and

other symptoms; there are no clinical laboratory tests to confirm diagnosis. *Benecke*, 379 F.3d at

589. Where the medical evidence includes a diagnosis of fibromyalgia, the ALJ should

determine at step two whether it is a severe medical determinable impairment pursuant to SSR

12-2p.

Here, the ALJ found that Plaintiff had several medically determinable and severe

impairments at step two. Tr. 21-22. Concerning Plaintiff's fibromyalgia, the ALJ agreed that it

was medically determinable, but concluded that the impairment was not severe. Tr. 22.

Specifically, the ALJ found that Plaintiff's symptoms were treated "sparingly and

conservatively," and that there was a "general lack of consistent signs of significant pain levels

on examination." *Id.* The ALJ's reasoning for finding Plaintiff's fibromyalgia, pain symptoms

non-severe because of his conservative pain treatment is inadequate. As discussed in more detail

in Section III below, Plaintiff consistently sought medical treatment for years for chronic, severe

pain. And Plaintiff followed his medical providers recommendations but failed to find any relief.

Following medical provider's recommendations cannot be considered conservative treatment

when no other treatment options are offered. *See Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664

(9th Cir. 2010) ("A claimant cannot be discrediting for failing to pursue non-conservative

treatment options where none exist."); *see also Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1210

(D. Or. 2019) ("Because the ALJ did not specify what 'more aggressive treatment options [were]

appropriate or available,' it would be illogical to discredit Plaintiff 'for failing to pursue non-conservative treatment options where none exist.'") (internal citation omitted).

Nevertheless, given that the ALJ continued the sequential evaluation process, any alleged error at step two is harmless. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (failure to identify a medically determinable impairment at step two was harmless because step two was decided in claimant's favor); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

## II.    Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effects of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

PAGE 8 – OPINION AND ORDER

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

A.    *Plaintiff's Testimony*

Plaintiff testified at the hearing that he experiences pain in his back, neck, and joints every day, has daily headaches, and difficulty sleeping every night. Tr. 58, 60. When asked whether he had difficulty sitting for long periods of time, he explained that "everything always changes. Sometimes I can sit for a while, sometimes I got to move in a couple minutes. All positions are always hurting for me, so I sit a little while and I move, or sit longer other times." Tr. 59. He testified that he uses a cane to walk every day, and if his "back's out," he will use a walker. Tr. 65. Although a CPAP and BiPAP machine were recommended for his sleep apnea, he testified he does not use them because the masks make him claustrophobic. Tr. 61. Instead, he uses an oxygen machine when he sleeps. Tr. 60. Regarding his mental impairments, he testified that his symptoms of depression and anxiety make it difficult for him to leave his home. Tr. 59.

B.    *ALJ's Decision*

At step one, ALJ found that Plaintiff produced sufficient objective medical evidence that his impairments could reasonably be expected to cause the severity of his symptoms. But at step two, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limited effect of his symptoms were not entirely consistent with the medical record. Tr. 26.

Plaintiff argues that the ALJ violated the Ninth Circuit's direction in *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015), by failing to identify the testimony she did not find credible. But *Brown-Hunter* is distinguishable because, even if the ALJ could have stated each reason more clearly, the "Court is still able to 'reasonably discern' the ALJ's path." *See Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-CV-01373-HZ, 2017 WL 1927926, at *7 (D. Or. May 10, 2017) (internal citations omitted). Here, the ALJ explained she found Plaintiff's subjective complaints unpersuasive because of (1) his poor effort at his medical exams, (2) the medical conclusions, (3) his activities of daily living, and (4) his conservative treatment.  The Court finds that the ALJ's first two reasons are supported by substantial evidence in the record. Although the last two are not for the reasons explained in Section III below, the ALJ's evaluation of a plaintiff's subjective symptom testimony can still be upheld even if all the reasons proffered are not valid. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

First, the ALJ found Plaintiff's testimony regarding his symptoms not credible because Plaintiff made a poor effort on multiple medical tests, and her conclusion is supported by the record. Tr. 20; 703 ("Neuro exam is difficult due to pain behavior, hypersensitivity and poor effort with strength testing."); 1152 ("Tandem gait cannot be performed due to instability, although this appears exaggerated."); 1153 ("The claimant demonstrates exaggerated weakness and poor effort during strength exam of the bilateral lower extremities."), 1455 ("[claimant is] a little bit quick to discontinue his efforts on difficult testing items"); 1462 ("Stress test negative but sub optimal effort."). Such a finding, supported by substantial evidence, is sufficient to support the ALJ's determination that Plaintiff's testimony was unreliable. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("[Claimant's] efforts to impede accurate testing of her limitations supports the ALJ's determinations as to her lack of credibility.").

Second, the ALJ found Plaintiff's testimony regarding his symptoms inconsistent with the conclusions of his medical providers. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (emphasis in original). His medical providers were inconsistent about whether a cane or a walker were necessary for Plaintiff to walk. Tr. 1152 ("His gait is slow, antalgic, and irregular. . . . Without his walker, he is observed walking more than 10 feet and his gait is essentially unchanged."), 1210 ("Needs walker for support."); 121 (claimant "uses a walker for long distances, yet there is no evidence to support it's need"). When there are ambiguities in the medical evidence, the ALJ is the final arbiter. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict[.]"). Her conclusion is supported by substantial evidence in the record. Regarding his COPD and respiratory issues, his exams consistently showed "unremarkable" and normal findings. *See, e.g.,* tr. 840, 891, 1002, 1008, 1175. Substantial evidence supports the ALJ's conclusions that Plaintiff's testimony was inconsistent with his medical findings, and she did not err in discounting the testimony.

## III.    Medical Opinion Evidence

Plaintiff argues that the ALJ improperly found Megan Lewis, FNP; Dr. Christina Bright; William Trueblood, PhD; Daniel Williams, LPC; Bridget[5] Knight, FNP; and Dr. Doug Willems's, DC, medical opinions not persuasive.  Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions,

---

[5] The ALJ's opinion and the briefing references Annette Knight, but the medical questionnaire and opinions that the ALJ references are from Bridget Knight.

but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b);
416.920c(a)-(b).

Under the revised regulations, the ALJ must "articulate . . . how persuasive [they] find all
of the medical opinions" and "explain how [they] considered the supportability and consistency
factors." 20 C.F.R. § 416.920c(b). At a minimum, "this appears to necessitate that an ALJ
specifically account for the legitimate factors of supportability and consistency in addressing the
persuasiveness of a medical opinion." *Kevin R. H. v. Saul*, No. 6:20-CV-00215-IM, 2021 WL
4330860, at *4 (D. Or. Sept. 23, 2021). An ALJ is "not required to explain how they considered
other secondary medical factors, unless they find that two or more medical opinions about the
same issue are equally well-supported and consistent with the record but not identical." *Id.*
(citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)). An ALJ's decision to discredit a medical
opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th
Cir. 2022).

A.    *Megan Lewis, FNP*

Lewis is a family nurse practitioner who began seeing Plaintiff in November 2018 for his
back pain, degenerative disc disease, and depression, and then became his primary care provider.
Tr. 645. Lewis gave Plaintiff a referral for pain management. Tr. 647. On this referral, Plaintiff
saw Physician Certified Assistant Katrina Cypcar in January 2019. Tr. 700. She noted that his x-
ray from 2018 showed "moderate to severe L4-5 and L5-S1 disc space narrowing and facet
hypertrophy." Tr. 703. Cypcar noted that "[u]nfortunately, his insurance does not cover
injections or procedures to address lumbar facet arthritis." Tr. 704. Based on Lewis's referral,
Plaintiff believed he was establishing pain care, but Cypcar noted that she told him their facility
was "not a pain clinic." *Id.*

Plaintiff returned to Lewis, still complaining of chronic pain. Tr. 843. He was prescribed muscle relaxants, which he said were not helpful. *Id.* She then recommended chiropractic care and physical therapy. Tr. 844. Plaintiff did not find physical therapy helpful, but did start seeing a chiropractor, which gave him only minimal relief. Tr. 879, 1318. He then began massage therapy, which also only gave him minimal relief. Tr. 1240. He continued seeing Lewis every 3-5 weeks through 2020 and 2021 complaining of chronic pain. Tr. 1240, 1233, 1219, 1200, 1486, 1513, 1531. No other treatment options were offered to Plaintiff.

In support of Plaintiff's disability application, Lewis opined that Plaintiff would not be able to sit or stand for more than one hour, that he would need frequent breaks if walking, and he would have a hard time lifting or carrying more than 10 pounds. Tr. 1596. She noted that Plaintiff would require "many unscheduled breaks during a typical workday" and that he would "need rest due to his pain/arthralgias, fatigue, mood, and possible medication side effects." *Id.*

The ALJ found Lewis's opinion not persuasive due to her "own conservative treatment" of Plaintiff. Tr. 31. While routine, conservative treatment can be sufficient to discount medical opinion evidence, *Rollins*, 261 F.3d at 856, the ALJ's finding here is not supported by substantial evidence. "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017).

Plaintiff consistently sought medical treatment from Lewis (and others) years for chronic, severe pain. Every 2-3 weeks, Plaintiff was complaining to one of his medical providers about his pain. *See, e.g.*, 645, 700, 843, 841, 1428, 1251, 1411. He was referred to pain specialists, which he went to. Tr. 700, 942, 883. He was referred to a chiropractor, which he saw. Tr. 1251, 1318. He was told to get massage therapy, which he did. Tr. 1240. But none of these different

options relieved his pain, and he continued to return to his medical providers, including Lewis, to seek help. *See, e.g.*, 1398, 1444, 1395, 1178, 1170, 1486, 1517, 1540.

Following medical provider's recommendations cannot be considered "conservative treatment" when no other treatment options are offered. *See Lapeirre-Gutt*, 382 F. App'x at 664 ("A claimant cannot be discrediting for failing to pursue non-conservative treatment options where none exist."); *see also Cindy F.*, 367 F. Supp. 3d at 1210 ("Because the ALJ did not specify what 'more aggressive treatment options [were] appropriate or available,' it would be illogical to discredit Plaintiff 'for failing to pursue non-conservative treatment options where none exist.'") (internal citation omitted). The ALJ's discounting of Lewis's medical opinion because of her conservative treatment of Plaintiff is not supported by substantial evidence and was harmful error.

   B.    *Christina Bright, MD*

Dr. Bright is a rheumatologist who saw Plaintiff a handful of times, starting in May 2020. Tr. 929, 952, 933, 942, 1620. In September 2021, she opined that Plaintiff's physical exam "and history were consistent with fibromyalgia with debilitating back pain and soft tissue pain." Tr. 1620. She noted that he was "on maximal medications for this already through his psychiatrist/PCP." *Id.* She opined that Plaintiff would need a break per hour, the ability to change position at will, and could spend less than one hour in a seated position in a day. *Id.*

The ALJ found Dr. Bright's opinion not persuasive because Dr. Bright did not have a "longitudinal relationship" with the Plaintiff, and her opinion was not consistent with his "conservative treatment" for his pain. Tr. 31. For the reasons explained above, the Court does not find the ALJ's determination that Plaintiff received conservative treatment supported by substantial evidence. And, under the new rules for evaluating medical opinion evidence,

although the length of a treatment relationship is a factor that can be considered, an ALJ must consider which medical opinions are best supported and consistent. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Without more, the ALJ failed to give reasons supported by substantial evidence to reject Dr. Bright's opinion, and such error was harmful.

> C.    *William Trueblood, PhD*

Lewis referred Plaintiff to Dr. Trueblood, a psychologist, in January 2021. Trueblood reviewed Lewis's records, interviewed Plaintiff, and administered the following tests: Wechsler Adult Intelligence Scale – Fourth Edition; Weschler Memory Scale – Fourth Edition; California Verbal Learning Test – Second Edition (CVLT-II); Word Memory Test; Trail Making Test; Rey-Osterrieth Complex Figure; Clock Drawing Test; and Beck Depression Inventory – II. Tr. 1454-55. Based on his assessment of Plaintiff, he wrote an evaluation to Lewis and filled out a form provided by Plaintiff's attorney for his disability application. Tr. 1453, 1585.

The ALJ found Dr. Trueblood's opinion unpersuasive because (1) he only met with Plaintiff once "with no review of the claimant's longitudinal medical treatment history"; (2) Dr. Trueblood's findings were not consistent with Plaintiff's mental treatment history "consisting of outpatient therapy/counseling and medication management with symptoms that waxed and waned and continued periods of improvement"; and (3) his findings were not consistent with Plaintiff's daily living activities. Tr. 32-33.

First, contrary to the ALJ's finding, Dr. Trueblood noted he reviewed Lewis's medical records. Tr. 1455. Second, the Ninth Circuit has emphasized that it is error to reject mental health evidence "merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Plaintiff's licensed professional counselor notes some sessions where Plaintiff "sounded somewhat engaged and receptive," tr. 1181, 1170, and

Plaintiff reported once "that his medications are helping somewhat," tr. 1361. But looking at the medical record as a whole shows a patient dealing with otherwise fairly constant depression and anxiety. Tr. 839, 837, 1428, 1417, 1213, 1180, 1176, 1517. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017. The ALJ's conclusion that Dr. Trueblood's opinion was inconsistent with Plaintiff's mental health treatment is not supported by substantial evidence.

Finally, the ALJ rejected Dr. Trueblood's opinion because it conflicted with Plaintiff's daily activities. Tr. 33. Dr. Trueblood opined that Plaintiff would be off task for 30% of an eight-hour day based on Plaintiff's inability to: remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended time periods; work in coordination with or proximity to others without being distracted; and complete a normal workday and workweek. Tr. 1579-88. And he found that Plaintiff would be off task for 20% of an eight-hour workday based on his inability to: perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; and respond appropriately to changes in work setting. *Id.*

The ALJ concluded that Plaintiff's daily activities of sitting in cars, shopping for groceries, microwaving pizzas, and paying his bills, were inconsistent with Dr. Trueblood's conclusions. Tr. 32. The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract" from opinions on a claimant's capabilities. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). "The critical difference between activities of daily

living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, and is not held to a minimum standard of performance, as she would be by an employer." *Garrison*, 759 F.3d at 1016. Moreover, Plaintiff's daily activities cited by the ALJ are not inconsistent with Dr. Trueblood's findings that Plaintiff would be off task for the reasons explained. There is not substantial evidence in the record that support the ALJ's discounting of Dr. Trueblood's medical opinion, and such error was harmful.

        D.    Daniel Williams, LPC

        Williams is a licensed professional counselor and began seeing Plaintiff in August 2020 and saw Plaintiff every 1-3 weeks for therapy. *See, e.g.*, 1394, 1207, 1184, 1387, 1198, 1172, 1169, 1359.  Like Dr. Trueblood, Williams filled out a form at the request of Plaintiff's attorney, and his answers were comparable to Dr. Trueblood's. Tr. 1612. The ALJ found William's opinion not persuasive because she concluded it was not supported by his own treatment history of Plaintiff "which consisted of counselling with evidence of some periods of improvements," and because of Plaintiff's daily activities. Tr. 33. For the same reasons explained above, the ALJ's reasoning is not supported by substantial evidence in the record and was harmful error.

        E.    Bridget Knight, FNP

        Knight is a family nurse practitioner and met with Plaintiff regularly for his medication management. *See, e.g.*, tr. 1417, 1421, 1413, 1230, 1400, 1398, 1395. Like Dr. Trueblood and Williams, Knight filled out the same questionnaire for Plaintiff's attorney, and her conclusions were similar to Williams and Dr. Trueblood. Tr. 1616. Again, the ALJ found Knight's opinion not persuasive because it was inconsistent with Knight's findings of some improvement of his mental health, and his "longitudinal mental health treatment" consisting of symptoms that waxed

and waned. Tr. 33. For the same reasons as explained above, such reasons are not supported by substantial evidence in the record and are harmful error.

F.     Doug Willems, DC

Dr. Willems is the chiropractor that Plaintiff saw for a few months at the behest of Lewis. Tr. 1318. Dr. Willems opined that Plaintiff "suffers from chronic spinal pain that is increased with prolonged static positions and physical activity." Tr. 1317. The chiropractic treatments would grant Plaintiff temporary relief, but his "symptoms would always return in a couple of days." *Id.* Dr. Willems opined that it would be difficult for Plaintiff to travel in a car for longer than 30 minutes. *Id.* He also filled out a form at the request of Plaintiff's attorney, focused on Plaintiff's physical abilities. Tr. 1677.

Again, the ALJ found Dr. Willems unpersuasive. Tr. 32. First, she concluded that Dr. Willems's opinion that Plaintiff would be off task for more than 25% of the day and that he would be incapable of "low stress" work inconsistent with his own treatment, "including signs of the claimant being neurologically intact on examination." Tr. 32. But, in completing the form and offering his medical opinions, Dr. Willems made clear that his conclusions were based solely on Plaintiff's pain level and that his pain "would interfere with his ability to concentrate," tr. 1679, and that Dr. Willems was not answering "questions related to psychological status as this is not [his] area of expertise," tr. 1681. The ALJ's conclusion otherwise is misplaced and not supported by substantial evidence. The ALJ also disregarded Dr. Willems's opinion because she found it inconsistent with Plaintiff's conservative treatment. Tr. 32. For the reasons explained above, such a conclusion is not supported by substantial evidence in the record.

The ALJ's rejection of Plaintiff's medical provider's opinions was not supported by substantial evidence in the record and was harmful error.

## IV.     Lay Witness Evidence

Finally, Plaintiff argues that the ALJ improperly discounted third-party function reports completed by Plaintiff's mother and his girlfriend of eight years.[6] Both reports relate limitations consistent with Plaintiff's own testimony and the opinions of his medical providers. Tr. 368, 396. The ALJ said she "fully considered" the reports but found them inconsistent "with the objective evidence contained within the medical records, as discussed above." Tr. 33-34.

Assuming that the objective evidence in the medical records was the same evidence she used to discount Plaintiff's subjective testimony, then her justification is sufficient.[7] *See Kyra H. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-CV-01979-AC, 2020 WL 2216912, at *19 (D. Or. May 7, 2020) ("The ALJ found the lay testimony to be inconsistent with medical evidence, which is an appropriate justification supported by the evidence.") (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)). Moreover, even assuming there was an error, any error is harmless since the lay witnesses' testimony is substantially similar to Plaintiff's own testimony. *See Marty T. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-00996-MK, 2022 WL 1137308, at *3 (D. Or. Apr. 18,

---

[6] The parties disagree about whether the Commissioner's revised regulations require the ALJ to articulate reasons for rejecting lay witness testimony. The relevant regulation provides: "[w]e are not required to articulate how we considered evidence from nonmedical sources *using the requirements in paragraphs (a)-(c) in this section.*" 20 C.F.R. § 404.1520c(d)(emphasis added). Defendant's argument that no articulation is required at all would render the highlighted part of the sentence superfluous. *See Jerri F. v. Kijakazi*, No. 1:20-4037-RMG-SVH, 2021 WL 3362227, at *14 (D.S.C. July 29, 2021), *report and recommendation adopted,* No. CV 1:20-4037-RMG, 2021 WL 3396230 (D.S.C. Aug. 3, 2021)("If ALJs were no longer required to provide any articulation as to how they considered lay witness statements, the additional language would be superfluous"). Thus, although the regulations no longer require the application of the requirements (a)-(c), they "do not eliminate the need for the ALJ to articulate analysis of lay-witness statements." *Jason R. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-01981-MK, 2022 WL 981329, at *9 (D. Or. Jan. 21, 2022), *report and recommendation adopted,* No. 6:20-CV-01981-MK, 2022 WL 980880 (D. Or. Mar. 31, 2022).

[7] If, however, the objective evidence the ALJ relied on is the evidence she used to discount the medical provider's opinions discussed in Section III, then the outcome would be less clear.

2022) ("An ALJ may discount lay testimony that is substantially similar to a claimant's allegations where the ALJ properly rejected the claimant's subjective symptom testimony.") (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

## V.   Remedy

Plaintiff asserts that this case should be remanded for immediate payment of benefits under the credit-as-true standard. Applying the requisite standard, for the reasons set forth below, the Court finds that the record is not free of conflict and ambiguity and therefore must be remanded for further proceedings.

### A.   *Legal Standard*

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (internal citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Generally, where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," the district court should remand for payment of benefits. *Garrison*, 759 F.3d at 1020.

PAGE 20 – OPINION AND ORDER

In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and whether there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015), *as amended* (Feb. 5, 2016). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the court can exercise its discretion to remand for an award of benefits. *Id.*

Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (internal quotations and citation omitted).

    B.    *Analysis*

The first and third prong necessitate a remand for further proceedings. On the first prong, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler*, 775 F.3d at 1101 (internal quotations and citations omitted). Relatedly, "evidence in the record not discussed by the ALJ" effects the third prong of the Court's analysis, as it creates serious doubts as to a plaintiff's disability. *See Burrell v. Colvin*, 775 F.3d 1133, 1131 (9th Cir. 2014).

Plaintiff's medical record contains ample evidence that Plaintiff suffers from substance abuse disorder. What is not clear from the ALJ's opinion or from the medical record is whether Plaintiff's medical providers declined to prescribe him the opioids he continuously requested because they did not believe his reports of pain, or because they believed his reports of pain but did not believe it was worth the risk to his substance abuse disorder. On remand, the ALJ may wish to develop the record further on this issue. *See Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (finding that "substantial evidence supports the ALJ's conclusion that [plaintiff's] drug-seeking behavior renders his self-reports of pain less persuasive" and "therefore [the ALJ] did not err in disregarding or discounting the medical opinions that relied on [plaintiff's] self-reports of pain").

## CONCLUSION

The Court reverses and remands the Commissioner's decision for further proceedings.

IT IS SO ORDERED.

DATED this 12th day of May, 2023.

ANDREW HALLMAN
United States Magistrate Judge